UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

REHABILITATION SUPPORT SERVICES, INC.,

                          Plaintiff,

                                                    1:16-CV-0307 (GTS/DJS)

v.

TOWN OF ESOPUS, NEW YORK; and TOWN OF
ESOPUS ZONING BOARD OF APPEALS,

                          Defendants.
_____

APPEARANCES:                                OF COUNSEL:

FREEMAN HOWARD, P.C.                         PAUL M. FREEMAN, ESQ.
  Counsel for Plaintiff                      MATTHEW J. GRIESEMER, ESQ.
441 East Allen Street
P.O. Box 1328
Hudson, New York 12534

MORITT, HOCK & HAMROFF, LLP                  ROBERT L. SCHONFELD, ESQ.
  Co-Counsel for Plaintiff
400 Garden City Plaza, Suite 202
Garden City, New York 11530

LEMIRE, JOHNSON & HIGGINS, LLC               GREGG T. JOHNSON, ESQ.
  Counsel for Defendants                     APRIL J. LAWS, ESQ.
2534 Route 9
P.O. Box 2485
Malta, New York 12020

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this discrimination action filed by Rehabilitation Support

Services, Inc. ("Plaintiff") against the Town of Esopus, New York, and the Town of Esopus

Zoning Board of Appeals ("Defendants"), is Defendants' motion for judgment on the pleadings

pursuant to Fed. R. Civ. P. 12(c).  (Dkt. No. 13.)  For the reasons set forth below, Defendants'
motion is granted in part and denied in part.

I.     **RELEVANT BACKGROUND**

   A.     **Plaintiff's Complaint**

   Generally, liberally construed, Plaintiff's Complaint alleges as follows.

<u>**Plaintiff's Proposed Residence**</u>

   Plaintiff is a not-for-profit mental health and rehabilitation agency whose mission is to
enrich and empower the lives of consumers by providing services and opportunities for
meaningful emotional, social, vocational and educational growth.  (Dkt. No. 1, ¶ 7 [Pl.'s
Compl.].)   Plaintiff seeks to establish a sober living residence for women recovering from
alcoholism and/or substance abuse at a two-acre property located at 141 Prospect Street in the
Town of Esopus, County of Ulster, State of New York.  (*Id.*, ¶ 1.)  The proposed residence will
house 16 women in a two-story community residence and will provide safe, supervised,
congregate housing with the goal of maintaining an abstinent lifestyle.  (*Id.*, ¶¶ 10-11.)  The
residence is not a detox facility, and no nursing or medical services will be provided there.  (*Id.*,
¶ 11.)  Residents will have already completed a long-term treatment program and will be
transitioning to a sober living environment before fully integrating back into society.  (*Id.*)  The
women at the residence will live together as a family and will cook together, maintain the
residence together, and assist each other in their recovery from alcoholism and/or substance
abuse.  (*Id.*, ¶ 13.)  The proposed residence will serve people who have disabilities, that make it
difficult for them to socialize, hold employment and live with their families independently.  (*Id.*,
¶ 14.)

Both the Ulster County Mental Health Department and the Substance Abuse Subcommittee of the Community Services Board identified the need for a community residence in Ulster County that would serve women exclusively and issued a Request for Proposal ("RFP") to develop a residence for women's community residential services. (*Id.*, ¶ 15.) In the RFP, Ulster County noted that the "[l]ocation of [the] Residence will be important [sic] A populated location or a site located between 2 populated areas will be considered more desirable than a rural locale." (*Id.*, ¶ 16.) The site proposed by Plaintiff at 141 Prospect Street fits the description of the type of site that Ulster County stated it desired in its RFP. (*Id.*, ¶ 17.)

### The Town's Zoning Code

The Town has a zoning code that regulates where residences and facilities can be located. (*Id.*, ¶ 18.) Plaintiff's proposed residence is located within the Town's R-12 zoning district ("R-12 District"). (*Id.*, ¶ 19.) The R-12 District is described as a moderate-density zoning district that allows, as of right, single-family dwellings on at least 1/3 of an acre. (*Id.*, ¶ 20.) In the previous version of the Town's Code, which was filed with the New York State Department on September 5, 1980, the Code defined "family" as follows:

> One or more persons occupying a dwelling unit as a single-non-profit housekeeping unit. More than five persons, exclusive of domestic servants, not related by blood, marriage or adoption, shall not be considered to constitute a family.

(*Id.*, ¶ 21.) Sometime between 1980 and 2012, the Town amended the Code to remove the definition of "family." (*Id.*, ¶ 22.) Accordingly, the term "family" is purposefully not defined or otherwise limited in the current version of the Town's Code. (*Id.*)

Among the uses permitted in the R-12 District with a special use permit are multi-family apartments and townhouses, two-family residences, alcoholism and other rehabilitation centers,

group homes, halfway houses, nursery schools, pre-school centers, and child day-care centers. (*Id.*, ¶ 23.) A "convalescent home" is not permitted in the R-12 District. (*Id.*, ¶ 24.) A "convalescent home" is defined in the Town's Code as a facility that provides "nursing care." (*Id.*, ¶ 25.) Plaintiff's proposed residence will not provide nursing care. (*Id.*, ¶ 26.)

## Opposition to Plaintiff's Proposed Residence

After Plaintiff informed the Town of its intentions to use the property located at 141 Prospect Street as a sober-living residence for women, the Town instructed Plaintiff to come to an informal session of the Town's Planning Board. (*Id.*, ¶ 27.) At this informal session, Plaintiff was instructed to submit an "informal application" to the Planning Board for its review and Plaintiff did so. (*Id.*, ¶ 28.) In a letter faxed to Plaintiff's counsel on June 7, 2015, Timothy Keefe, the Town's Building Inspector and Zoning Enforcement Officer, stated that, "after careful review of the information provided by the applicant, a review of the Building Code of NY and the Town of Esopus Zoning Code, the proposed construction of a single family dwelling for the purpose of Chemical Dependence Rehabilitation will not require a Special Use Permit or Site Plan approval." (*Id.*, ¶ 29.) However, after Mr. Keefe sent his letter to Plaintiff's counsel, community opposition to Plaintiff's proposed residence arose. (*Id.*, ¶ 30.) In response to this opposition, Mr. Keefe sent another letter to Plaintiff's counsel, dated June 15, 2015, and did an "about-face" by stating that he needed to review Plaintiff's application further and asked its counsel to "please disregard my privious [sic] correspondence." (*Id.*, ¶ 31.)

On June 18, 2015, after publicly acknowledging that it "had no legal authority over whether or not [the proposed residence] was permitted under the [Town's] Code," the Town Board nonetheless proceeded to take public comments from members of the community opposed

to the proposed residence. (*Id.*, ¶ 32.) On August 10, 2015, Mr. Keefe issued an opinion letter finding that Plaintiff's proposed residence was not a single-family dwelling but a "convalescent home" under the Town's Code and, therefore, was not permitted in the R-12 District. (*Id.*, ¶ 33.) Plaintiff did not provide Mr. Keefe with any new information from the time he issued his initial determination to the time he issued his final determination. (*Id.*, ¶ 34.) Similarly, at no time during that period did Plaintiff provide Mr. Keefe with information that nursing care would be provided at the residence. (*Id.*, ¶ 35.) Accordingly, it is reasonable to believe that Mr. Keefe changed his mind solely because of community opposition to Plaintiff's proposed residence. (*Id.*, ¶ 37.)

After receiving Mr. Keefe's final determination, Plaintiff appealed the decision to the Town's Zoning Board of Appeals ("ZBA"). (*Id.*, ¶ 38.) Plaintiff's appeal was considered at a hearing held by the ZBA on October 20, 2015, where Plaintiff's counsel explained the nature of the proposed residence. (*Id.*, ¶ 39.) At no time did Plaintiff provide any information to the ZBA demonstrating that the proposed residence was going to be providing nursing care; indeed, Plaintiff's counsel advised the ZBA that the residence would not be providing either nursing care or any type of medical care. (*Id.*, ¶ 40.) Many neighboring residents came to the public hearing and wrote letters to the ZBA to object to the proposed residence. (*Id.*, ¶ 41.)

### The ZBA's Decision

The ZBA ultimately determined that the proposed residence is not a "single family dwelling" because "it would not be compatible, in terms of its size and operating characteristics, with the predominantly one family dwellings that surround the . . . property" and that, even though no nursing care was to be provided, the residence is a "convalescent home" not permitted

in the R-12 District. (*Id.*, ¶ 58.) The ZBA's written determination also makes repeated reference to the community's opposition to the proposed residence. (*Id.*, ¶ 42.) Specifically, the ZBA's determination discussed the following five complaints made by neighboring residents related to the proposed residence: (1) the size of the proposed residence as well as the number of residents who would live there; (2) the fact that residents of the proposed residence would pay rent and allegedly would have some counseling and supervision; (3) speculation that the proposed residence's "no-smoking" policy "will cause program participants to congregate at the public frontage of the site, adjacent to a narrow roadway, and is dangerous on that particular road"; (4) the fact that residents of the proposed residence may reside there for only five months; and (5) the neighboring residents expressed concern about (a) "a lack of any criminal background check," (b) that the proposed residence would be an "Open Campus," and (c) that "participants of unknown criminal background will be wandering through the surrounding neighborhood of one family dwellings which is populated by many children." (*Id.*, ¶¶ 44, 47-49.)

None of the arguments raised by the neighboring residents are proper or usual considerations made by a municipality in determining whether a residence is a "single family dwelling" for the purpose of a zoning code. (*Id.*, ¶ 52.) It is clear that the neighborhood objections were based on a speculative, conclusory, and prejudicial view of the disabilities of the people who will reside in Plaintiff's proposed residence. (*Id.*, ¶ 53.)

With regard to the remaining portions of the ZBA's written determination, the ZBA, in a section entitled "Other Considerations," states that it is "not consistent with a one family dwelling" for a residence to be owned by a not-for-profit organization like Plaintiff that will also be seeking a tax exemption. (*Id.*, ¶ 54.) Similarly, in another section of its determination, the

ZBA notes that, from its point of view, the structure of the proposed residence does not appear to be a single-family dwelling despite the fact that the Town Code does not discuss how the structure of a residence would transform a single-family dwelling into something else.  (*Id.*, ¶ 55.)  In reaching this conclusion, the ZBA notes that it considered that the proposed residence will have a lounge and recreation room.  (*Id.*, ¶ 56.)

Finally, the ZBA notes in its determination that an Executive Summary prepared by the New York State Office of Alcoholism and Substance Abuse Services ("OASAS"), which is the agency that would license the proposed residence, states that the proposed residence is a "8361 Residential Care" use and that "would require approval of a special use permit." (*Id.*, ¶ 57.)  Indeed, under the Town's Code, an "8361 Residential Code" residence is not prohibited from the R-12 District but instead would require a special use permit from the Town.  (*Id.*)  An "8361 Residential Code" residence or facility refers to a code set by the United States Department of Labor.  (*Id.*)

## Plaintiff's Causes of Action

Based upon the foregoing allegations, the Complaint alleges that Defendants' actions violated the Fair Housing Act ("FHA") and Title II of the Americans with Disabilities Act ("ADA") in that (a) Defendants improperly relied upon neighborhood opposition, which was based on factually unfounded conclusions, speculations, stereotypes and prejudices regarding people with disabilities, in making their determination, (b) Defendants deviated from the Town's Code and their usual practices in determining that the proposed residence is a not a single-family dwelling, (c) Defendants improperly determined that the proposed residence is a "convalescent home," even though the Town's Code defines such a home as one that provides nursing care and

the record before the ZBA established that nursing care would not be provided at the proposed residence, (d) Defendants' determination that the proposed residence is a "convalescent home" and, therefore, not permitted in the R-12 District, is contrary to OASAS' determination that the residence is a "8361 Residential Care" use and should be allowed in the zone with a special permit, and (e) even if the proposed residence is a "convalescent home," the Complaint alleges that the Town's Code is facially discriminatory in violation of the FHA because it excludes convalescent homes for people with disabilities from the R-12 District but allows larger residences and facilities to exist there with a special permit that are far more intrusive than Plaintiff's proposed residence.  (*Id.*, ¶¶ 69-76.)

## B. Parties' Briefing on Defendants' Motion

### 1. Defendants' Memorandum of Law

Defendants assert three arguments in support of their motion to dismiss.  (Dkt. No. 13, Attach. 15 [Defs.' Mem. of Law].)[1]

First, Defendants argue that the Complaint should be dismissed as premature because no final determination has been made regarding Plaintiff's proposed residence.  (*Id.* at 17-18.) More specifically, Defendants argue that, under Second Circuit precedent (including *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118 [2d Cir. 2014]), Plaintiff must obtain a final decision from the Town regarding its proposed residence or demonstrate that it would be futile to do so before its claims are ripe for adjudication.  (*Id.* at 18-19.)  Defendants argue that, thus far, Plaintiff has obtained only a classification determination from the ZBA and can still apply for a

---

[1]    Page citations refer to the page numbers used on CM/ECF rather than the actual page numbers contained in the parties' respective motion papers.

use variance,[2] among other things, before any decision can be considered final. (*Id.* at 18-19, 23-24.) Furthermore, Defendants argue that the futility exception is applicable only when the relevant agency "lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied." (*Id.* at 18-19.) Defendants argue that case precedent in this District has established that a plaintiff is not excused from seeking a use variance merely because a municipality and its officials were openly hostile to a proposed use of real property. (*Id.* at 19.)

Second, Defendants argue that the Court should abstain from deciding this case under the *Younger* abstention doctrine because (a) Plaintiff has filed an Article 78 proceeding in New York State Supreme Court seeking the same or similar relief, (b) the Article 78 proceeding implicates compelling state interests because it involves the application of New York Town Law as well as the local laws of the Town of Esopus in determining land use issues, and (c) Plaintiff's federal claims can be adequately addressed by the New York State Supreme Court. (*Id.* at 24-26.)

Third, and finally, Defendants argue that, alternatively, the Court should abstain from deciding this case under the *Colorado River* abstention doctrine for the following seven reasons: (1) the federal and state court actions are parallel because they both involve the same parties and land use issues; (2) it is undisputed that the New York Supreme Court has jurisdiction of Plaintiff's land use claims; (3) the forum for the state court action in Albany County is more

---

[2]     "Under New York law, a special use permit, unlike a variance, authorizes the use of property in a manner expressly permitted by the zoning ordinance under stated conditions. . . . The significance of this distinction is that the inclusion of the permitted use in the ordinance is tantamount to a legislative finding that the permitted use is in harmony with the general zoning plan and will not adversely affect the neighborhood. . . . Thus, the burden of proof on an owner seeking a special use permit is lighter than on an owner seeking a variance." *Westchester Day Sch. v. Vill. of Mamaroneck*, 417 F. Supp. 2d 477, 561 (S.D.N.Y. 2006).

geographically convenient for the parties than this Court's forum; (4) this Court should seek to avoid piecemeal litigation because litigating both actions creates the potential for inconsistent rulings; (5) although both actions were filed on March 15, 2016, the verification attached to the state court complaint is dated March 14, 2016, and, therefore, the state court action should be considered to have proceeded this action; (6) abstention is appropriate because this Court would have to first decide issues of state law before addressing Plaintiff's federal claims; and (7) there is little concern that the state court will inadequately protect Plaintiff's interests or that Plaintiff would be barred from seeking relief because the statute of limitations has not expired, nor is it in danger of expiring in the near future. (*Id.* at 27-29.)

### 2. Plaintiff's Opposition Memorandum of Law

In opposition to Defendants' motion, Plaintiff asserts the following three arguments. (Dkt. No. 14 [Pl.'s Opp'n Mem. of Law].) First, Plaintiff argues that this action is ripe for adjudication. In so doing, Plaintiff distinguishes *Sunrise Detox* on the ground that the action was not ripe because plaintiff neither appealed the zoning officer's determination to the town's ZBA nor sought a variance while, in the present matter, Plaintiff did appeal Mr. Keefe's determination to the Town's ZBA (and, therefore, did not need to seek a variance). (*Id.* at 7-8.)

In any event, Plaintiff argues that it would be futile to pursue other forms of relief from the ZBA because (a) the ZBA found that the proposed residence "would not be compatible, in terms of its size and operating characteristics, with the predominantly one family dwellings that surround the Cole property," (b) in seeking a use variance, Plaintiff would have to show that, if granted, the proposed residence will not alter the essential character of the neighborhood, and (c) in light of the ZBA's finding, Plaintiff's proposed residence would not be compatible, in terms of

size and operating characteristics, with the one-family dwellings that surround the property. (*Id.* at 8-9.)  Furthermore, Plaintiff argues that it does not have to exhaust any administrative procedures before claiming that the Town's Code is facially discriminatory.  (*Id.* at 9.)

Second, Plaintiff argues that Defendants rely on an antiquated reading of the *Younger* abstention doctrine, which was repudiated by this Court in *Rehab. Support Servs., Inc. v. City of Albany*, 14-CV-0499, 2015 WL 4067066 (N.D.N.Y. July 2, 2015) (Kahn, J.).  (*Id.*)  Specifically, Plaintiff argues that, under the more modern "categorical approach," *Younger* abstention applies to only three categories of cases: (a) state criminal prosecutions, (b) civil enforcement proceedings, and (c) civil proceedings that implicate a State's interest in enforcing the orders and judgments of its courts.  (*Id.*)  Plaintiff further argues that, in *City of Albany*, Judge Kahn found that a challenge to a municipal zoning ordinance under the FHA did not involve any of these three categories.  (*Id.* at 10.)

Third, and finally, Plaintiff argues that abstention under *Colorado River* is also inappropriate because this action is not parallel to the state court action.  (*Id.* at 10.)  More specifically, Plaintiff argues that this case involves claims that the ZBA's determination and the Town's Code are discriminatory under federal law, warranting the annulment of the Town's Code and the recovery of compensatory damages and attorneys fees.  (*Id.* at 11.)  Conversely, the state court action involves a challenge to the ZBA's determination as being arbitrary and capricious under state law and does not seek to annul the Town's Code or to recover compensatory damages and attorneys fees.  (*Id.*)

In any event, Plaintiff argues, even if the two actions are parallel, *Colorado River* abstention should not be applied for the following reasons: (a) this controversy does not involve

a res, (b) the two forums are located close together, (c) dismissing the federal claims would do nothing to avoid piecemeal litigation because Defendants have not moved to dismiss Plaintiff's claims that the ZBA's determination and the Town's Code are discriminatory, (d) this action was filed before the one in state court, (e) a determination in the state court action cannot fully compensate Plaintiff for past injuries because only "incidental" damages are available in an Article 78 proceeding and the constitutionality of the Town's Code cannot be challenged in such a proceeding, and (f) federal law controls Plaintiff's causes of action because they are based on federal statutes.  (*Id.* at 12.)

### 3.      Defendants' Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition memorandum of law, Defendants assert the following three arguments.  (Dkt. No. 16 [Defs.' Reply Mem. of Law].)

First, Defendants repeat their argument that this action is not ripe for adjudication because Plaintiff did not apply for a special use permit and/or use variance following the ZBA's determination and the Complaint does not allege facts plausibly suggesting that doing so would be futile.  (*Id.* at 5-9.)  Furthermore, Defendants argue that Plaintiff's tortured interpretation of *Sunrise Detox* should be disregarded because it calls for the invention of facts that were not in evidence before the Second Circuit and places hypothetical arguments before this Court in an attempt to mitigate Plaintiff's failure to pursue other forms of relief from the ZBA before bringing this action.  (*Id.* at 5-6.)  Defendants also argue that Plaintiff has failed to address other cases that Defendants have cited, including *S&R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452 (S.D.N.Y. 2008), which are analogous to this case and support their position that dismissal of the Complaint is warranted under the law of this Circuit.  (*Id.* at 5.)

With respect to Plaintiff's claim that the Town's Code is facially discriminatory, Defendants argue that the Complaint does not allege facts plausibly suggesting an injury independent of the challenged land-use decision as required by the Second Circuit in *Safe Harbor Retreat LLC v. Town of E. Hampton*, 629 F. App'x 63, 64-66 (2d Cir. 2015). (*Id.* at 7-8.)

Second, Defendants argue that the Court should abstain from deciding this case under the *Younger* abstention doctrine because (a) Plaintiff has brought an action in state court seeking the same or similar relief, (b) Plaintiff's claims implicate important state interests because they address the constitutionality of state land use issues and zoning laws, (c) Plaintiff's federal claims can be adequately addressed by the state court, and (d) Plaintiff's state court action falls under the civil enforcement category of *Younger* abstention because Plaintiff seeks to prevent Defendants from allegedly violating the constitutional rights of its proposed disabled tenants. (*Id.* at 9-10.)

Third, and finally, Defendants repeat their argument that, should the Court find that the *Younger* abstention doctrine does not apply, the Court should nevertheless find that abstention is appropriate under *Colorado River*. (*Id.* at 10.) Defendants further argue that, in opposing their motion, Plaintiff has confused the meaning of "parallel" with "identical." (*Id.*) More specifically, Defendants argue that the proper test is whether both actions are "substantially similar," and that abstention is appropriate where Plaintiff's state and federal actions are asserted against substantially similar parties, raise substantially similar issues, and the state proceeding can dispose of all claims. (*Id.* at 11.) Applying that test here, Defendants argue that both actions clearly involve substantially similar issues as evidenced by the allegations in Plaintiff's Article 78 petition, which raises numerous constitutional objections to the Town's Code for the

proposition that Defendants acted "arbitrary and capriciously" and violated the constitutional rights of Plaintiff's proposed disabled tenants. (*Id.*) Furthermore, Defendants argue that there is a substantial likelihood that the state court action will fully dispose of the claims asserted in this action because the state court cannot resolve Plaintiff's state law claims without first answering whether the Town Code and the ZBA's determination are constitutionally sound. (*Id.*) Consequently, Defendants argue, any finding by the state court regarding these issues would render the present case moot or could potentially contradict any ruling made by this Court. (*Id.* at 11-12.)

## II.    RELEVANT LEGAL STANDARD

### A.    Legal Standard Governing Motions for Judgment on the Pleadings

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases). In evaluating such motions, district courts must accept all allegations in the complaint as true and draw all reasonable inferences in the Plaintiff's favor. *Patel*, 259 F.3d at 126 (citing *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 644 [2d Cir. 1998]).

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.

2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[3]

---

[3]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion

### B. Legal Standard Governing Motions to Dismiss for Lack of Subject-Matter Jurisdiction

"A motion to dismiss based on the abstention doctrine is . . . considered as a motion made pursuant to Rule 12(b)(1)." *City of N.Y. v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 341 (E.D.N.Y. 2008). Similarly, "[r]ipeness of a claim implicates the Court's subject matter jurisdiction." *Komondy v. Gioco*, 59 F. Supp. 3d 469, 475 (D. Conn. 2014).

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir.

---

to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

2000). A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction. *Makarova*, 201 F.3d at 113. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]). When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

## III.   ANALYSIS

### A.   Whether Plaintiff's Claims Are Ripe for Adjudication

After carefully considering the matter, the Court answers this question in the negative with respect to Plaintiff's claims regarding the ZBA's classification determination for the reasons stated in Defendants' memoranda of law. (Dkt. No. 13, Attach. 15, at 17-24 [Defs.' Mem. of Law]; Dkt. No. 16, at 5-9 [Defs.' Reply Mem. of Law].) However, the Court answers this question in the affirmative with respect to Plaintiff's claims that the challenged provisions of the Town's Code are facially discriminatory for the reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No. 14, at 9 [Pl.'s Opp'n Mem. of Law].) To those reasons, the Court adds the following analysis.

#### 1.   Ripeness of Plaintiff's FHA and ADA Claims Regarding the ZBA's Classification Determination

Although the Court is skeptical regarding how Plaintiff's proposed residence could be deemed to be a "convalescent home" without the provision of nursing care, the Court agrees with Defendants that the ZBA's classification determination does not constitute a final decision regarding Plaintiff's proposed residence. The Complaint does not allege that Plaintiff applied for

a building permit, a use variance, or any other form of relief before bringing this action. Such actions are necessary before a decision can be considered final. *See*, *e.g.*, *Dean v. Town of Hempstead*, 163 F. Supp. 3d 59, 78 (E.D.N.Y. 2016) ("A plaintiff cannot have received a final decision without submitting a plan for development of the property for its intended or another use and seeking available variances or waivers of the requirements at issue."); *S&R Dev. Estates*, 588 F. Supp. 2d at 462 (noting that, "[a]lthough plaintiffs are correct that the ZBA issued an opinion as to the zoning classification of the Property, it has not issued a final decision as to S & R's development plan"); *Goldfine v. Kelly*, 80 F. Supp. 2d 153, 159 (S.D.N.Y. 2000) ("Even where the plaintiff applies for approval of a subdivision plan and is rejected, a claim is not ripe until the plaintiff also seeks variances that would allow it to develop the property."); *accord*, *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 598-99 (S.D.N.Y. 2013) (citing cases).

A similar version of Plaintiff's argument that the ZBA's classification determination should be deemed an exhaustion of its administrative remedies was considered, and rejected, in *Safe Harbor Retreat, LLC v. Town of E. Hampton, N.Y.*, 14-CV-2017, 2015 WL 918771 (E.D.N.Y. Mar. 2, 2015), which was affirmed by the Second Circuit. In that case, the town's building inspector reversed his prior determination that a treatment center for alcoholism and substance abuse could exist in a residentially zoned district. *Safe Harbor*, 2015 WL 918771, at *2-3. Rather than seek a special use permit, as required by the town's code, the plaintiff appealed the building inspector's determination, which was upheld by the town's ZBA. *Id.* at *3. The plaintiff then filed an action in federal court but it was found unripe for adjudication by the United States District Court for the Eastern District of New York. The court found as follows:

> Safe Harbor has not applied for a special permit, let alone received a final decision on that application. Rather, the Town upheld the building inspector's determination that Safe Harbor was operating the Premises as an unauthorized semi-public facility and, as such, needed to apply for a special permit. Given Safe Harbor's failure to seek a special permit, the Town has not rendered a final decision regarding Safe Harbor's use of its Premises; nor has the Town had the opportunity to make an accommodation through the Town's "established procedures used to adjust the neutral policy in question," namely, special permit and variance procedures.

*Id.* at *6. The court then stated that "[t]his Court's review of plaintiff's FHA and ADA claims without (1) resolution of whether a special permit or variance might provide the relief Safe Harbor seeks, (2) precise demonstration of how the Town Code will be applied to Safe Harbor's Premises, and (3) development of a full record presents a very real risk of undue interference in 'matters of local concern more aptly suited for local resolution.'" *Id.*

This Court shares the concerns expressed by the *Safe Harbor* court. Although Plaintiff cannot apply for a special use permit because Defendants have determined that the proposed residence is a convalescent home (which is not included in the Town's Schedule of Permitted Uses for the R-12 District), Plaintiff has not sought a use variance or any other forms of relief. (Dkt. No. 13, Attach. 3, at 2 [Defs.' Ex. B] [Keefe letter explaining that convalescent homes are not permitted in the R-12 District].) *See also Code of the Town of Esopus New York*, Schedule of Permitted Uses (updated Nov. 1, 2008), at 263, http://www.esopus.com/building/esopuscodes.pdf. Therefore, the Court finds that Plaintiff's claims are not ripe for adjudication.

Similarly, the Court finds that Plaintiff has not demonstrated that it is entitled to the futility exception. District courts "have found that[,] in order to invoke the futility exception, a plaintiff must demonstrate: (1) the inevitability of refusal of their application, taking into

consideration factors such as the defendants' hostility, delay and obstruction; and (2) that plaintiff has filed at least one meaningful application." *Quick Cash of Westchester Ave. LLC v. Vill. of Port Chester*, 11-CV-5608, 2013 WL 135216, at *8 (S.D.N.Y. Jan. 10, 2013).  Similarly, futility in this context has been described by the Second Circuit as "when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 349 (2d Cir. 2005).  "It is well established that the standard for finding futility is high." *In the Matter of the Application of Hampshire Recreation, LLC v. Vill. of Mamaroneck*, 14-CV-7228, 2016 WL 1181727, at *14 (S.D.N.Y. Mar. 25, 2016).

Here, Plaintiff's argument that it would be futile to apply for a use variance based upon the ZBA's opinion that the proposed residence would not be compatible, in terms of its size and operating characteristics in a predominantly single-family neighborhood, is speculative.  Indeed, there are no factual allegations in the Complaint, nor anything in the ZBA's written decision (Dkt. No. 13, Attach. 11), that plausibly suggest that Defendants would not be amenable to other suggestions, alternative plans, and/or negotiations involving a way that the proposed residence can exist that is satisfactory for all parties involved.[4]  *See MacDonald, Sommer & Frates v. Cty. of Yolo*, 477 U.S. 340, 351-52 (1986) (finding, in the takings context of the Fifth Amendment, that the agency did not render a final decision because the possibility remained that "some

---

[4]     The Court notes that it has reviewed the independent conclusions made by the ZBA members regarding the classification determination of Plaintiff's proposed residence and notes that, although some of the ZBA members expressed their opinion that the proposed residence "would not fit in with the neighborhood" and that "it does not fit with the character of the neighborhood in any way[,]" these opinions do not preclude the possibility that a variance or some other form of relief could be agreed upon by the parties.  (Dkt. No. 13, Attach. 12, at 5-6 [Defs.' Ex. K].)

development will be permitted"); *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 188 (1985) (finding plaintiff's claims were premature, in part, because "respondent did not . . . seek variances that would have allowed it to develop the property according to its proposed plat, notwithstanding the Commission's finding that the plat did not comply with the zoning ordinance and subdivision regulations"); *Safe Harbor Retreat*, 629 F. App'x at 65 ("Safe Harbor's failure to apply for the special permit prevents us from determining whether East Hampton and, by extension, the Zoning Board 'ha[ve] dug in [their] heels and made clear that all such applications will be denied.'"); *Goldfine*, 80 F. Supp. 2d at 160 ("The Second Circuit has refused to apply the futility exception to the final decision requirement where the plaintiff has submitted, and had denied, only one application for a land-use permit."); *cf. Donovan Realty, LLC v. Davis*, 07-CV-0905, 2009 WL 1473479, at *4 (N.D.N.Y. May 27, 2009) (Homer, M.J.) (finding futility exception applied where the planning board chairperson indicated that "under no circumstances would the Planning Board ever consider granting the Plaintiffs' request for a site plan amendment at their . . . property").

Finally, although the Complaint alleges that there was public hostility towards the proposed residence, this in and of itself does not suffice to establish futility. *See Dean*, 163 F. Supp. 3d at 88 (noting that "hostility does not necessarily mean that future applications will be futile") (citing cases); *Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, N.Y.*, 111 F. Supp. 3d 459, 479 (S.D.N.Y. 2015) ("Futility does not exist merely because public officials are hostile to the proposal at issue."); *S&R Dev. Estates, LLC*, 588 F. Supp. 2d at 463 ("The Town's alleged hostility and bias can not be imputed to the ZBA simply because the Town appoints the ZBA members.").

## 2. Ripeness of Plaintiff's Claim that the Town's Code Is Facially Discriminatory

Plaintiff correctly states in its opposition memorandum of law that "a plaintiff need not await a final decision to challenge a zoning policy that is discriminatory on its face." *Sunrise Detox V, LLC*, 769 F.3d at 123; *see also Lamar Advert. of Penn, LLC v. Town of Orchard Park, N.Y.*, 356 F.3d 365, 374 (2d Cir. 2004) (explaining that "[the plaintiff] need not have first sought and been denied any permit prior to filing a facial challenge"); *MacDonald v. Safir*, 206 F.3d 183, 189 (2d Cir. 2000) ("[T]here is no need for a party actually to apply or to request a permit in order to bring a facial challenge to an ordinance (or parts of it). . . ."). Accordingly, the Court finds that a claim of facial discrimination is ripe for adjudication. Furthermore, the Court finds that the Complaint alleges facts plausibly suggesting that the relevant sections of the Town's Code are facially discriminatory for the reasons discussed below.

"Facial challenges to statutes under the FHA and ADA are generally evaluated under the rubric of intentional discrimination . . . using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Rehab. Support Servs., Inc.*, 2015 WL 4067066, at *9. "With regard to facially discriminatory housing policies . . . a plaintiff makes out a prima facie case of intentional discrimination under the [FHA] merely by showing that a protected group has been subjected to explicitly differential–i.e. discriminatory–treatment." *Id.* (internal quotation marks omitted). "Though a plaintiff may eventually be required to show discriminatory animus in order to prevail on its claim, such a showing is not necessary to survive a motion to dismiss." *Id.*

In *Rehab. Support Servs.*, the plaintiff alleged that "[c]ertain multi-unit residences, such as dormitories, nursing homes, and bed and breakfasts, may obtain a special use permit to

operate in an R2A district." *Id.* at *1. Meanwhile, "[o]ther multi-unit dwellings, including Plaintiff's planned residence, must obtain a use variance in order to establish a residence in an R2A zone." *Id.* The plaintiff alleged that "[t]he procedures for obtaining a use variance differ from those required to obtain a special use permit" because, while "individuals seeking a special use permit must . . . go through an application process, they need not show 'unnecessary hardship' in order to obtain a permit." *Id.* Judge Kahn concluded that these allegations were sufficient to state a claim because "Plaintiff has alleged that multiple-person dwellings serving people with disabilities are not allowed as of right in residential districts in the City, and that other multiple-person dwellings such as dormitories and nursing homes are subject to a less burdensome process to establish residences in the City than are homes serving people with disabilities." *Id.* at *11.

Similarly, in the present case, Plaintiff alleges that the Town's Code is facially discriminatory because it allows large residences and facilities for non-disabled people to exist in the R-12 District but not dwellings such as Plaintiff's proposed residence for people with disabilities. More specifically, the Complaint alleges that "the Town's Zoning Code is facially discriminatory in violation of the [FHA] in that there are facilities for non-disabled people allowed in the zone with a special permit such as apartment buildings, multi-family dwellings, and child day-care centers that are far more intrusive and far less single family in nature than the proposed RSS residence." (Dkt. No. 1, ¶ 71 [Pl.'s Compl.].) The Complaint further alleges that, "[i]n excluding convalescent homes for people with disabilities from the zone but allowing with a special permit larger residences and facilities that are less residential in nature, the Town's Zoning Code discriminates against people with disabilities on its face and is thus in violation of the [FHA]." (*Id.*, ¶ 72.)

Significantly, the Complaint alleges that these larger residences and facilities are allowed in the R-12 District only after obtaining a special use permit. Although Defendants argue in their reply memorandum of law that Plaintiff never applied for a special use permit (Dkt. No. 16, at 8 [Defs.' Reply Mem. of Law]), it appears that their determination that Plaintiff's proposed residence is a convalescent home precludes this avenue of relief for the reasons discussed above in Part III.A.1. of this Decision and Order. Accordingly, Plaintiff will need to apply for a use variance, which is a more burdensome process than applying for a special use permit. *Compare* Town of Esopus Code § 123-44 (requiring, among other things, that an applicant demonstrate "unnecessary hardship" in order to obtain a variance) *with* Town of Esopus Code § 123-13 (stating requirements for a special permit, which do not include "unnecessary hardship") *and* Town Code § 123-13(O) (stating requirements for a special permit for institutional uses, which include, among other things, "nursing homes and personal care facilities, hospitals, elementary and secondary schools, colleges and professional schools, child day-care centers and . . . nonmedical residential care facilities").[5] Therefore, the Complaint alleges facts plausibly suggesting that the Town's Code treats Plaintiff differently than similarly situated individuals without disabilities and that the Code is discriminatory on its face.[6]

---

[5] The Court notes that it may properly consider the Town's Code in its entirety on their motion for judgment on the pleadings because the Town's Code was incorporated by reference in the Complaint and is material contained in the public record, of which the Court may take judicial notice. *See Missere v. Gross*, 826 F. Supp. 2d 542, 553 (S.D.N.Y. 2011) (stating that "[t]he Court may also take judicial notice of all documents in the public record, including the decisions of the ZBA, the decisions of the Supreme Court in the Article 78 proceedings, and the provisions of the Village zoning code, that the Parties have submitted in affidavits with their motion papers").

[6] The Court notes that, even if Defendants were to argue that the Town's Code is not discriminatory because the R-12 District allows (with a special use permit) group homes operated for disabled persons not requiring nursing care, the Court would be suspicious of that

**B.      Whether the Court Should Abstain from Deciding This Case**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Plaintiff in its opposition memorandum of law.  (Dkt. No. 14, at 9-13 [Pl.'s Opp'n Mem. of Law].)  To those reasons, the Court adds the following two points.

First, Defendants' argument that this matter falls under the "civil enforcement" category for *Younger* abstention is unpersuasive.  (Dkt. No. 16, at 10 [Defs.' Reply Mem. of Law].)  The Supreme Court has stated that "[o]ur decisions applying *Younger* in instances of civil enforcement have generally concerned state proceedings 'akin to a criminal prosecution' in 'important respects.'. . . Such enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act. . . . In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S.Ct. 584, 592 (2013).  Defendants fail to articulate how the Article 78 proceeding is "akin to a criminal prosecution."  Furthermore, the action was not initiated by "the State in its sovereign capacity" but by Plaintiff, which is a private corporation. *Sprint*, 134 S.Ct. at 592.  Finally, no state authority conducted an investigation into Plaintiff's activities, and no state actor lodged a formal complaint against Plaintiff.  *Id.*; *see also Rehab. Support Servs.*, 2015 WL 4067066, at *8 (finding Article 78 proceeding did not "fall within one of the enumerated categories of cases that trigger *Younger* abstention").

---

argument because of the distinction between persons with a disability severe enough to require nursing care and persons with a disability not severe enough to require nursing care.  *See Messier v. Southbury Training Sch.*, 94-CV-1706, 1999 WL 20910, at *10 (D. Conn. Jan. 5, 1999) ("Courts hold repeatedly that the ADA . . . prohibit[s] discrimination on the basis of severity of disability.") (collecting cases).

Second, the Court is unpersuaded that it should abstain from deciding this case on the ground that this action is substantially similar to the state court action. "As a general matter, 'federal courts are obliged to decide cases within the scope of federal jurisdiction. Abstention is not in order simply because a pending state-court proceeding involves the same subject matter.'" *Rehab. Support Servs.*, 2015 WL 4067066, at *8 (quoting *Sprint*, 134 S.Ct. at 588 [2013]). Furthermore, the Court agrees with Plaintiff that the two actions are not parallel because (a) this action involves a challenge to the Town's Code as being facially discriminatory, and (b) the Article 78 proceeding challenges the ZBA's determination as being arbitrary and capricious under state law. In addition, Plaintiff is seeking compensatory damages and attorneys fees in this action, which it is not doing in the Article 78 proceeding. *See Mclean-Katter, LLC v. Keegan*, 06-CV-1499, 2006 WL 3050878, at *2 (E.D.N.Y. Oct. 20, 2006) (declining to exercise abstention under *Colorado River* because Article 78 proceeding was not "parallel" to federal action where plaintiff sought vindication for defendants' alleged discriminatory acts in federal court while state proceeding involved narrow issue of whether Town's resolution was arbitrary and capricious). The Court likewise adopts Plaintiff's arguments regarding the remaining *Colorado River* factors. (Dkt. No. 13, at 11-13 [Pl.'s Opp'n Mem. of Law].)

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss the Complaint (Dkt. No. 13) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Plaintiff's claims that Defendants' classification determination regarding Plaintiff's proposed residence violates the FHA and ADA are **DISMISSED without prejudice**; and it is further

**ORDERED** that **SURVIVING** Defendants' motion are Plaintiff's claims that the

Town's Code is facially discriminatory in violation of the FHA and ADA.

Dated: December 8, 2016
      Syracuse, New York

                                         Hon. Glenn T. Suddaby
                                         Chief U.S. District Judge